Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHAWN WALDROP, | Case No: |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| MONTAGE RESOURCES CORPORATION, RANDALL ALBERT, MARK BURROUGHS, GENE DAVIS, DON DIMITRIEVICH, RICHARD PATERSON, D. MARTIN PHILLIPS, JOHN REINHART, DOUGLAS SWANSON, JR. and ROBERT ZORICH, | |
| Defendants. | |

Plaintiff Shawn Waldrop ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1.      This is an action against Montage Resources Corporation ("Montage" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

1

Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Montage by Southwestern Energy Company ("Southwestern").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, and the alleged misstatements entered and the subsequent damages occurred in this District.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff is, and has been at all relevant times hereto, an owner of Montage's common stock.

7.      Defendant Montage is an oil and natural gas exploration and production company in the United States. The Company is incorporated in Delaware. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "MR."

2

8.      Defendant Randall Albert ("Albert") is Chairman of the Board of the Company.

9.      Defendant Mark Burroughs ("Burroughs") is a director of the Company.

10.     Defendant Gene Davis ("Davis") is a director of the Company.

11.     Defendant Don Dimitrievich ("Dimitrievich") is a director of the Company.

12.     Defendant Richard Paterson ("Paterson") is a director of the Company.

13.     Defendant D. Martin Phillips ("Phillips") is a director of the Company.

14.     Defendant John Reinhart ("Reinhart") is President, Chief Executive Officer, and a director of the Company.

15.     Defendant Douglas Swanson, Jr. ("Swanson") is a director of the Company.

16.     Defendant Robert Zorich ("Zorich") is a director of the Company.

17.     Defendants Albert, Burroughs, Davis, Dimitrievich, Paterson, Phillips, Reinhart, Swanson, and Zorich are collectively referred to herein as the "Individual Defendants."

18.     Defendants Montage and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.  Background of the Company and the Proposed Transaction

19.     Montage is an exploration and production company engaged in the acquisition and development of oil and natural gas properties in the Appalachian Basin. It has properties in the Utica Shale fairway (referred to as the Utica Core Area) and the Marcellus Area.

20.     EnCap Investments L.P. ("EnCap") and its funds own approximately 39% of the outstanding shares of Montage common stock as of September 30, 2020.

21.     On August 12, 2020, Montage and Southwestern issued a press release announcing that they had entered into a definitive merger agreement under which Southwestern will acquire

Montage in an all-stock transaction. Based on the 3-day average closing share prices of the companies as of August 11, 2020 and under the terms of the agreement, Montage shareholders will receive 1.8656 shares of Southwestern for each Montage share. The press release states, in pertinent part:

### <u>Southwestern Energy Announces Agreement to Acquire Montage Resources</u>

*At-market, all-stock, in-basin acquisition delivers step change in free cash flow,*
*captures synergies and is accretive to all key financial metrics*

August 12, 2020 07:00 AM Eastern Daylight Time

SPRING, Texas--(BUSINESS WIRE)--Southwestern Energy Company (NYSE: SWN) and Montage Resources Corporation (NYSE: MR) today announced that they have entered into a definitive merger agreement under which Southwestern Energy will acquire Montage Resources in an all-stock transaction. Based on the 3-day average closing share prices of the companies as of August 11, 2020 and under the terms of the agreement, Montage Resources shareholders will receive 1.8656 shares of Southwestern for each Montage Resources share. The transaction is expected to close in the fourth quarter of 2020, subject to customary closing conditions, including the approval of the Montage Resources shareholders.

\*        \*        \*

"This is an exciting step for Southwestern as we expand our Appalachia footprint with the high-quality assets of Montage. As we have consistently stated, we are firm believers in the benefits of value-creating consolidation. This transaction further solidifies the Company's position as a premier Appalachia operator and provides additional scale and synergies strengthened by our leading operational execution. Consistent with our strategy, this transaction is expected to deliver increased free cash flow, improved returns and long-term value to shareholders," said Bill Way, Southwestern Energy President and Chief Executive Officer.

Way continued, "This acquisition is expected to deliver on all criteria of an accretive, value-adding transaction for the shareholders of both Southwestern Energy and Montage Resources. Southwestern Energy has consistently and methodically taken steps to enhance its resilience over the last few years, and this transaction solidifies that path and delivers on the commitment to responsibly manage the balance sheet and return to free cash flow."

John Reinhart, President and CEO of Montage Resources, commented, "This transaction creates a compelling opportunity for both Southwestern Energy and Montage Resources shareholders to benefit from the strength of the consolidated

company. The combination creates a Company of substantial scale with capabilities to enhance cash flow generation and a strong balance sheet that provides opportunities for enhanced shareholder value creation. We appreciate all of the great work by Montage employees in forming a very attractive business that will continue to build upon the success of Southwestern Energy."

Concurrently, Southwestern also commenced a registered underwritten public offering of 55,000,000 shares of its common stock, with the proceeds expected to be used to retire a portion of Montage Resources' 8.875% Senior Notes due 2023. The remaining portion of the Montage notes outstanding have the potential to be refinanced opportunistically.

This transaction delivers on the key strategic objectives that Southwestern Energy has been targeting:

- No premium transaction
- Enhances free cash flow
- Improves leverage ratio
- Capture of tangible synergies
- In-basin assets where technical and operating expertise can be leveraged
- High-quality inventory included in go forward development plans
- Retains peer leading maturity runway

\*       \*       \*

**Advisors**

Citi and Goldman Sachs & Co. LLC are acting as financial advisors and Skadden, Arps, Slate, Meagher & Flom LLP is acting as legal advisor to Southwestern. Barclays is acting as financial advisor and Norton Rose Fulbright LLP is acting as legal advisor to Montage Resources. Vinson & Elkins LLP is acting as legal advisor to EnCap Investments, L.P.

**Conference Call**

Southwestern Energy will host a conference call today at 10:00 a.m. Central to discuss this transaction. To participate, dial US toll-free 877-879-1183, or international 412-902-6703 and enter access code 1383175. A live webcast will also be available at ir.swn.com.

**About Southwestern Energy**

Southwestern Energy Company is an independent energy company engaged in natural gas, natural gas liquids and oil exploration, development, production and marketing.

**About Montage Resources**

Montage Resources is an exploration and production company with approximately 195,000 net effective core undeveloped acres currently focused on the Utica and Marcellus Shales of Southeast Ohio, West Virginia and North Central Pennsylvania.

22.     On October 6, 2020, Defendants caused to be filed with the SEC a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

23.     The Proxy Statement, which recommends that Montage shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (1) Montage, Southwestern, and pro forma Southwestern financial projections; (2) the financial analyses performed by Montage's financial advisor, Barclays Capital Inc. ("Barclays"), in connection with its fairness opinion; (3) potential conflicts of interest involving Barclays; and (4) the sales process leading up to the Proposed Transaction.

24.     The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Background of the Merger; (ii) Recommendation of the Montage Board and Reasons for the Merger; (iii) Certain Unaudited Forecasted Financial Information; and (iv) Opinion of Montage's Financial Advisor.

25.     Unless and until the material misstatements and omissions (referenced below) are remedied before the November 12, 2020 shareholder vote on the Proposed Transaction, Montage shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

6

1.  **Material Omissions Concerning the Financial Projections of Montage, Southwestern, and Southwestern Pro Forma**

26.     The Proxy Statement omits material information concerning the financial projections of Montage, Southwestern, and Southwestern pro forma.

27.     The Proxy Statement fails to disclose the following concerning the financial projections for Montage, Southwestern, and Southwestern pro forma: (1) all line items used to calculate (i) EBITDAX, (ii) CFFO, and (iii) Free Cash Flow; (2) the net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

28.     When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

29.     Accordingly, in order to cure the materially misleading nature of the aforementioned financial projections, Defendants must provide a reconciliation table of the

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Oct. 16, 2020) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

aforementioned non-GAAP metrics to their most comparable GAAP metrics. Defendants must also disclose the line item projections that were used to calculate these metrics. Such projections are necessary to make the non-GAAP projections included in the Proxy Statement not misleading.

30.    The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Barclays' Financial Analyses

31.    In connection with the Proposed Transaction, the Proxy Statement omits material information concerning Barclays' financial analyses.

32.    The Proxy Statement fails to disclose the following concerning Barclays' "*Net Asset Valuation Analysis*": (1) the future after-tax cash flows utilized by Barclays in its analysis, and all underlying line items; (2) the after-tax general and administrative costs for both Montage and Southwestern; (3) the other capital expenditure and cost adjustments for Montage; (4) the value of hedges for each of Montage and Southwestern; (5) the drilling and completion costs for both Montage and Southwestern; (6) the value of certain midstream and marketing earnings for Southwestern; (7) the value of firm transportation commitment shortfalls for Southwestern; (8) the carryover basis and NOL balances for both Montage and Southwestern; and (9) the range of discount rates utilized in the analysis and the underlying inputs and assumptions thereof.

33.    With respect to Barclays' "*Selected Comparable Company Analysis*" and "*Selected Comparable Transaction Analysis*," the Proxy Statement fails to disclose the individual multiples and financial metrics of each company and transaction utilized by Barclays in its analyses.

34.    With respect to Barclays' "*Pro Forma Merger Consequences Analysis*," the Proxy Statement fails to disclose the range of valuation multiples applied to the Montage EBITDAX for 2021.

35.    With respect to Barclays' "*Transaction Premium Analysis*," the Proxy Statement

fails to disclose the individual premiums paid in each transaction utilized by Barclays in its analysis.

36. With respect to Barclays' "*Equity Research Analyst Price Targets Analysis*," the Proxy Statement fails to disclose the individual price targets analyzed and the sources thereof.

37. The valuation methods, underlying assumptions, and key inputs used by Barclays in rendering its purported fairness opinion must be fairly disclosed to Montage shareholders. The description of Barclays' fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Montage shareholders are unable to fully understand Barclays' fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**3. Material Omissions Concerning Potential Conflicts of Interest Involving Barclays**

38. The Proxy Statement omits material information concerning potential conflicts of interest involving Barclays.

39. The Proxy Statement discloses certain services for which Barclays purportedly received fees from Montage, Southwestern, and EnCap in the past two years, stating in pertinent part:

> Barclays has performed various investment banking services for Montage, Southwestern and certain entities affiliated with EnCap in the past, and expects to perform such services in the future, and has received, and expects to receive, customary fees for such services.
>
> [**Services Provided to Montage and its Predecessors and Affiliates**]
> Specifically, in the past two years, Barclays has performed and received fees for certain financial advisory services to Blue Ridge Mountain Resources, Inc. in connection with its merger with Eclipse Resource Corporation announced in August 2018. Montage is the resulting combined entity of such merger transaction.

Further, an affiliate of Barclays is a lender under Montage's existing revolving line of credit facility.

[**Services Provided to Southwestern**]
In the past two years, Barclays has not received any fees for investment banking services for Southwestern.

[**Services Provided to EnCap and its Affiliates and Portfolio Companies**]
In addition, Barclays and its affiliates in the past have provided, currently are providing, or in the future may provide, investment banking services to EnCap, and certain of its affiliates and portfolio companies and have received or in the future may receive customary fees for rendering such services, including (i) having acted or acting as financial advisor to EnCap, certain of its affiliates and/or portfolio companies in connection with certain mergers and acquisition transactions; (ii) having acted or acting as arranger, bookrunner and/or lender for EnCap, certain of its affiliates and/or portfolio companies in connection with the financing for various acquisition transactions; and (iii) having acted or acting as underwriter, initial purchaser and placement agent for various equity and debt offerings undertaken by EnCap, certain of its affiliates and/or portfolio companies.

40.     The Proxy Statement, however, fails to disclose the amount of compensation Barclays and its affiliates received or expect to receive for the aforementioned services provided to (i) Montage and its predecessors and affiliates; and (ii) EnCap and its affiliates and portfolio companies.

41.     Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

42.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4.    Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

43.     The Proxy Statement omits material information concerning the sales process

leading up to the Proposed Transaction.

44.     The Proxy Statement provides that Montage entered into confidentiality agreements with Southwestern and other potential buyers, including Company A, Company B, and Company C.

45.     The Proxy Statement provides that the Company's confidentiality agreements with Southwestern, Company A, and Company C contained standstill provisions with a "'fall away' provision rendering the standstill provision inoperative and of no force or effect" under certain circumstances.

46.     With respect to Company B, however, the Proxy Statement is silent as to whether the standstill provision in Company B's confidentiality agreement with Montage contained a fall away provision rendering the standstill inoperative and of no force or effect.

47.     Without this information, Montage shareholders may have the mistaken belief that Company B is or was permitted to submit superior proposals for the Company, when in fact it is or was contractually prohibited from doing so. This information is material because a reasonable Montage shareholder would want to know, prior to voting for or against the Proposed Transaction, whether Company B is or was foreclosed from submitting a superior proposal.

48.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

<u>**COUNT I**</u>
**For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder**
<u>**Against All Defendants**</u>

49.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above,

which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

51.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

52.     The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

53.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

54.     Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

### COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

55.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions

as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

57.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

58.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

59.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they

13

reviewed and considered—descriptions which had input from the Individual Defendants.

60.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

61.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.     Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: October 16, 2020                              Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
         zhalper@halpersadeh.com

*Counsel for Plaintiff*